UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

J-QUAN JOHNSON,

        **Plaintiff,**        15-CV-6915 (ER)(SN)

   -against-           **OPINION AND**
                    **ORDER**
CITY OF NEW YORK, et al.,

        **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge**:

The defendants move to preclude the plaintiff from presenting evidence of damages for physical or mental injuries pursuant to Local Civil Rule 83.10 and Rule 37 of the Federal Rules of Civil Procedure. The motion is DENIED.

## BACKGROUND

On September 2, 2015, Plaintiff J-Quan Johnson brought this 42 U.S.C. § 1983 action against the City of New York, the New York City Police Department, and several individual police officers. ECF No. 1. The plaintiff alleged that police used excessive force while arresting him on August 30, 2014, and thereby aggravated a preexisting injury to his Achilles tendon. Id. at 5–10. The action was designated for participation in the Court's "Plan for Certain § 1983 Cases Against the City of New York," which is outlined in Local Civil Rule 83.10. ECF No. 4.

The plaintiff served the defendants with the summons and complaint on September 14, 2015, ECF No. 8, and two days later, provided counsel for defendants with authorizations for the release of his medical records from New York Presbyterian Hospital for the period of August 31, 2014, to the present, ECF No. 60 ¶ 5. Approximately two weeks thereafter, the defendants

notified the plaintiff that Local Civil Rule 83.10 required him to provide medical releases for all records of treatment for any relevant preexisting conditions. ECF No. 60-1. The plaintiff immediately sent the defendants authorizations for medical records from Columbia Presbyterian and New York Presbyterian Hospital for the period of June 2014 to the present. ECF No. 60-2. The defendants subsequently obtained certain medical records that indicated that the plaintiff had received treatment for his preexisting Achilles tendon injury under a different name: "Dishi Nash." ECF No. 60 ¶ 8. After the defendants informed plaintiff's counsel of this issue, the plaintiff provided releases for medical records for "J-Quan Johnson aka Dishi Nash" from New York Presbyterian Hospital, and the defendants obtained those records. Id. ¶¶ 13–14.

Over the months that followed, the defendants made a slew of requests for medical releases for various healthcare providers. Id. ¶¶ 20, 22, 24, 25, 26, 31, 37. The defendants sent some of these requests after identifying new medical providers who appeared to have treated the plaintiff. Id. ¶¶ 14, 18, 29–31. The defendants made other requests after discovering that certain medical providers had no records of treating "J-Quan Johnson" during the relevant time period, which led the defendants to believe that the plaintiff was treated using a different name. Id. ¶ 24, 36. In response, the plaintiff repeatedly supplied the defendants with medical record releases for various combinations of patient names and medical providers. Id. ¶ 21, 23, 27, 32, 35, 40. Yet the defendants remained dissatisfied with the authorizations and medical records they had received. ECF No. 48. Thus, in April 2017, the defendants filed a pre-motion letter asking the Court to preclude the plaintiff from seeking damages for physical and mental injuries. Id.

On May 17, 2017, the Court held a conference to discuss the authorizations and medical records. ECF No. 63. Plaintiff's counsel explained that at the commencement of the lawsuit, he was unaware that his client had used a different name when obtaining medical treatment for the

2

preexisting injury, and this misunderstanding had resulted in delays in providing the proper authorizations. Id. at 2, 16. Plaintiff's counsel also noted that his client had a great deal of difficulty remembering the names of all of his medical providers. Id. at 10. Nevertheless, the plaintiff had sought to comply with all of the defendants' requests for authorizations and was willing to take whatever additional steps were necessary to assist the defendants in obtaining outstanding medical records. Id. at 16. In response, the defendants noted that they had been unable to obtain medical records for the ten days before August 30, 2017, and argued that those records were important for determining whether the plaintiff had reinjured his Achilles tendon during that period and before his arrest. Id. at 18–20. In light of the ongoing disputes, the Court directed the parties to submit briefs discussing whether the plaintiff should be precluded from presenting evidence of damages for physical and mental injuries. Id. at 20. The Court also ordered the plaintiff to provide the defendants with any outstanding releases by May 26, 2017. ECF No. 55.

On May 23, 2017, the plaintiff produced additional releases for medical records for both "J-Quan Johnson" and "J-Quan Johnson aka Dishi Nash" for eight medical providers, including Drs. Kumar Kadiyala and James T. Vosseller. ECF No. 60-24. On August 18, 2017, the defendants filed their motion to preclude the plaintiff from presenting evidence of damages for physical and mental injuries. ECF No. 59. Defense counsel stated that the defendants had not yet received an authorization for the release of the plaintiff's medical records from RiverSpring Certified Home Health Agency. ECF No. 60 ¶ 47. Counsel also noted that the defendants had not yet received records from Dr. Kadiyala, Dr. Vosseller, or any physical therapists who treated the plaintiff in connection with his Achilles tendon injury, though counsel did not indicate that these deficiencies were attributable to noncompliance by the plaintiff. ECF No. 60 ¶ 48.

## DISCUSSION

Local Civil Rule 83.10 states that "[i]f plaintiff seeks compensation for any physical or mental injury caused by the conduct alleged in the complaint other than 'garden variety' emotional distress, plaintiff must serve on the City the medical release annexed as Exhibit B ('Medical Release') for all medical and psychological treatment records for those injuries at the same time that plaintiff serves" the complaint. Local Civil Rule 83.10(1)(a)–(b). In addition, "[w]here plaintiff has a pre-existing physical or mental condition that reasonably appears to be related to the injury for which compensation is sought, plaintiff must at that same time serve Medical Releases on the City for all records of treatment for such pre-existing condition(s)." Local Civil Rule 83.10(1)(b). A plaintiff's "[f]ailure to so serve" the relevant medical releases "will constitute a waiver of plaintiff's claims for compensation for that physical or mental injury." Id.

Similarly, Rule 37 of the Federal Rules of Civil Procedure provides that if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). Additionally, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e)," a court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1).

In assessing whether to impose sanctions under Rule 37, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." World Wide Polymers, Inc.

4

v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012) (omission in original) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)). "[S]triking [a party's] request for damages reflects a harsh sanction, one akin to dismissing the action altogether." Id. Moreover, "[d]ismissal is a drastic remedy that should be imposed only in extreme circumstances . . . usually after consideration of alternative, less drastic sanctions." Id. (omission in original) (internal quotation marks omitted) (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)).[1]

The defendants argue that "[w]hen plaintiff failed to provide the medical releases as required at the outset of the litigation, plaintiff waived his claims for his alleged physical and/or mental injuries." ECF No. 62 at 17. In support, the defendants point to an unpublished decision in which the Court precluded a "plaintiff from asserting claims for compensation for physical or mental injury because she ha[d] failed to timely disclose alleged medical treatment and to serve medical releases upon defendant." Salazar v. City of New York, No. 15 Civ. 1989, slip op. at 1 (S.D.N.Y. Mar. 18, 2016). But in that case, the plaintiff failed to disclose any medical treatment for the injuries alleged until at her deposition, and medical releases were ultimately not produced until nearly one year after she filed her complaint. Id. at 1–2. By contrast, the plaintiff provided releases for the medical care he received as a result of his arrest within two days of service of the complaint, and supplemented those releases with additional releases for treatment records for a pre-existing injury two weeks later. Unlike the plaintiff in Salazar, this plaintiff immediately disclosed the existence of medical treatment records and produced releases in a timely manner.

---

[1] There is a tension between Local Civil Rule 83.10(1)(a)—which states that a failure to timely serve medical releases "will constitute a waiver" of certain damages claims—and the Rule 37 case law—which states that striking a party's request for damages is a "harsh sanction" that should be used only in "extreme circumstances," World Wide Polymers, 694 F.3d at 159. Accordingly, the Court seeks to take an approach that is not unduly harsh under the circumstances of this case.

5

Subsequent delays in this case were not a result of willful misrepresentations. Rather, the delays were largely caused by confusion surrounding the alias the plaintiff sometimes used when obtaining medical treatment and by the plaintiff's difficulty remembering the facilities and professionals that provided him medical care. ECF No. 63 at 2, 10.

Despite these obstacles, the plaintiff appears to have made good faith efforts to execute releases and assist the defendants in obtaining the medical records they required. When the defendants asked the plaintiff to execute authorizations for records of medical care he received using the name "Dishi Nash," the plaintiff timely provided authorizations for those medical records. ECF No. 60 ¶ 13; ECF No. 60-5.

The defendants subsequently obtained records suggesting that the plaintiff had received medical care from other providers, and in a series of requests, the defendants requested that the plaintiff execute new authorizations for various providers. ECF No. 60 ¶¶ 14, 18, 23, 46. According to the defendants, there were times when the plaintiff did not promptly respond to their requests for authorizations and medical records. ECF No. 60 ¶¶ 20, 25, 28. But it appears the defendants have now received authorizations and medical records for almost all of the providers who treated the plaintiff. When the defendants filed their motion to preclude damages, they were awaiting only an authorization for RiverSpring Certified Home Health Agency, but they had received authorizations for all of the plaintiff's other known providers. ECF No. 60 ¶¶ 47–48. In other words, the plaintiff has been substantially compliant with the defendants' requests for medical record authorizations.

There have certainly been many lengthy delays in this case—more than a year and a half elapsed between the filing of the complaint and the plaintiff's most recent production of medical record releases. But the defendants have not pointed to any evidence that the plaintiff willfully

withheld authorizations or other information during that time. On the contrary, it seems the plaintiff sought in good faith to comply with his obligations under Local Civil Rule 83.10. Striking plaintiff's entire claim for damages based on the Local Civil Rule would constitute a drastic and harsh remedy that is not warranted under the circumstances.

Although plaintiff's counsel may have not have adequately interrogated its client to assist in the identification of *all* of the treating physicians, there is no evidence to suggest that the delays in disclosure are due to counsel's lackadaisical efforts or, worse, a conspiracy to withhold relevant information. Rather, the delays appear due to plaintiff's "confusion," which may be largely of his own making. Under the circumstances, however, an award of attorneys' fees would be unjust.

## CONCLUSION

The defendants' motion to preclude the plaintiff from recovering damages is DENIED. The Clerk of Court is requested to terminate the motion at ECF No. 59.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:  November 8, 2017
        New York, New York