UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J-QUAN JOHNSON,

                Plaintiff,

      - against -

THE CITY OF NEW YORK; THE NEW YORK CITY
POLICE DEPARTMENT; POLICE OFFICER DWIGHT
POWELL, Shield Number 9038; SGT. VICENTE
PEREZ, Shield Number 3173; POLICE OFFICER
EMMANUEL VALERIO, Shield Number 20335;
POLICE OFFICER STEVE TIRADO, Shield Number
22659; POLICE OFFICER JAMES BURKE, Shield
Number 28483; POLICE OFFICER GERARD STAPLES,
Shield Number 24526; POLICE OFFICER ROBERT
STAPLETON, Shield Number 17814; POLICE OFFICER
JOSE JOSEPH, Shield Number 14133; JOHN DOE NEW
YORK CITY POLICE OFFICER NUMBER ONE; JOHN
DOE NEW YORK CITY POLICE OFFICER NUMBER
TWO; JOHN DOE NEW YORK CITY POLICE
OFFICER NUMBER THREE; JOHN DOE NEW YORK
CITY POLICE OFFICER NUMBER FOUR; and JOHN
DOE NEW YORK CITY POLICE OFFICER NUMBER
FIVE, all "JOHN DOE" names being fictitious and
representing New York City Police Officers whose actual
names remain unknown to Plaintiff,

                Defendants.

**OPINION AND ORDER**

15 Civ. 6915 (ER)

Ramos, D.J.:

      On September 2, 2015, Plaintiff J-Quan Johnson ("Johnson") filed the instant action

against the City of New York (the "City"), the New York City Police Department ("NYPD"),

and several NYPD officers (collectively with the City and NYPD, "Defendants"), in which he

alleges that the NYPD officers assaulted and arrested him unjustifiably at a neighborhood block

party. Doc. 1. Before the Court is Defendants' motion for partial summary judgment. Doc. 79.

For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### 1. <u>Factual Background[1]</u>

On June 7, 2014, Johnson ruptured the Achilles tendon in his left leg while playing a pickup game of basketball. *See* Pl.'s 56.1 Resp. ¶ 2. As a result of this injury, Johnson underwent several surgeries on his leg. *See id.* ¶¶ 3, 5; *see also* Deposition of J-Quan Johnson ("Johnson Dep."), Doc. 83 Ex. A, at 72:10–74:16, 84:3–11.

On August 30, 2014, Johnson decided to attend a back-to-school block party on West 164th Street, between Edgecombe Avenue and Amsterdam Avenue, in Washington Heights, New York. Johnson Dep. 53:23–54:13. Johnson walked to the block party on crutches, accompanied by his mother, and arrived at the party between 4:00 p.m. and 6:00 p.m. *Id.* at 58:9–59:9.

Roughly 10 to 20 people were still setting up for the block party when Johnson arrived. *Id.* at 67:13–23. However, by 9:00 p.m., there were roughly 300 to 400 people in attendance. *Id.* at 67:5–68:1. Many attendees, including Johnson, were drinking alcohol and listening to music in the street. *Id.* at 69:1–9. Some attendees were also smoking marijuana in the street. *Id.* at 69:11–19. Johnson, however, was not smoking. *Id.* at 69:11–21.

The block party's organizers did not have a valid permit to host the large street gathering. *Id.* at 58:4–8.

---

[1] The following facts are recounted in the light most favorable to Johnson, the nonmovant. *See Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, 393 (S.D.N.Y. 2012), *aff'd*, 714 F.3d 749 (2d Cir. 2013) (per curiam). The facts are drawn from Plaintiff's Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Resp."), *see* Doc. 83; Defendants' Counterstatement to Plaintiff's Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Counterstatement"), *see* Doc. 86; and the parties' supporting submissions—including transcripts of the parties' deposition testimonies. References in this Opinion to the parties' Rule 56.1 Statements incorporate the evidentiary citations therein.

Between 8:40 p.m. and 9:00 p.m., Johnson observed NYPD officers arrive at the block party and attempt to disperse the crowd. *Id.* at 134:3–8. For at least twenty minutes, Johnson heard the officers order all partygoers to disperse from the block. Johnson, however, remained seated in a chair. *Id.* at 139:7–18. When most partygoers refused to leave, the officers returned to their cars and turned on their sirens for about two to five minutes. *Id.* at 139:14–140:7. Johnson interpreted the sirens as another attempt to disperse the crowd. *Id.* at 140:5–7. However, in response to the sirens, Johnson remained seated. *Id.* at 140:8–9. Eventually, the officers left the block. *Id.* at 139:14–140:7.

Officers returned to the block party two to four minutes after they initially tried—and failed—to disperse the crowd. *Id.* at 142:10–16. Once again, Johnson noticed officers walking up to people and telling them to leave. *Id.* at 143:16–144:19. Yet Johnson, once again, remained seated. *Id.* at 144:24–145:5.

Johnson then witnessed "chaos" break out when an officer tried to arrest someone at the block party. *Id.* at 145:9–12, 146:4–147–9. Some partygoers started to throw glass bottles at or near the officers. *Id.* at 147:4–20, 167:3–15. Others yelled and cursed at the officers. *Id.* Johnson, for his part, remained in the same spot. *Id.* at 148:14–19. Two minutes later, a police officer approached Johnson directly and asked him to leave the scene. *Id.* at 149:1–21. Johnson told the officer that he was on crutches and therefore was waiting for the crowd to lighten before walking up the street. *Id.* at 149:14–17.

Approximately thirty seconds later, Johnson started to walk up the street. *Id.* at 150:15–23. After walking roughly two buildings' length up the street, Johnson stopped to observe officers converse with a man nearby. *Id.* at 152:25–154:7–21. During the officers' conversation with the man, the block party crowd was still "hostile," *id*. at 166:22–167:18; and people in the

crowd were still yelling and cursing at the officers, *id.* at 167:16–18. While observing officers

talk to the man, Johnson exclaimed aloud that the officers needed to "get a fucking life." *Id.* at

167:19–168:10.

At a certain point during the conversation between the man and the officers, one

officer—Defendant Powell—ordered the man to "back up" and then pushed him. *Id.* at 165:6–

16. Falling backward, the man bumped into Johnson's leg. *Id.* Johnson then stumbled

backward a few steps and exclaimed—aloud, but to no one in particular—"Oh, what the fuck."

*Id.* at 168:11–23. Johnson then turned to Officer Powell and said, "Yo, watch what you're

doing." *Id.* at 168:11–14. Officer Powell responded, "I don't give a fuck about your foot." *Id.*

at 171:5–8. The two men subsequently exchanged words when, suddenly, Officer Powell

reached out with his hands and pushed Johnson's head back. *Id.* at 171:6–172:7.

Seconds later, three or four police officers, in addition to Officer Powell, jumped on

Johnson. *Id.* at 172:10–19. The officers punched him repeatedly. *Id.* at 174:19–175:23.

Johnson raised his hands in front of his face to protect himself from the blows. Pl.'s 56.1 Resp.

¶ 63. The officers eventually wrestled him to the ground. Johnson Dep. 178:23–25. While on

the ground, the officers continued to punch him and commanded him to "stop resisting." *Id.* at

178:13–18. In response to the officers' commands, Johnson exclaimed, "I am not resisting, you

all are laying on me, you got my arms. How can I resist. I am not resisting, I can't move." *Id.* at

179:23–180:2. As he lay on the ground, Johnson felt someone stomp on his left leg and at least

four hits from a baton. *Id.* at 180:8–16.

The police officers eventually handcuffed Johnson. *Id.* at 194:12–15. After being

handcuffed, the officers dragged Johnson by his shirt collar down the street and seated him on

the ground next to an ambulance. *Id.* at 207:7–210:4. While Johnson was seated next to the ambulance, one officer walked up and punched him in the face. *Id.* at 210:22–211:6.

Johnson was then placed in the ambulance and transported to New York Presbyterian Hospital. *See* Third Amended Compl. ¶ 43. After discharge from the hospital, Johnson was charged with the crime of Assault in the Second Degree, due to his alleged assault upon Officer Powell. *Id.* ¶ 44. Approximately 11 months later, on August 3, 2015, all charges against him were dismissed. *Id.* ¶ 45.

## 2. **Procedural Background**

Johnson filed the instant action on September 2, 2015. Doc. 1. He subsequently amended his complaint three times, with his Third Amended Complaint filed on November 29, 2016. Doc 36. In his Complaint, Johnson names as defendants the following: The City; NYPD; Sergeant Vicente Perez; and Officers Emmanuel Valerio, Steve Tirado, James Burke, Gerard Staples, Robert Stapleton, Jose Joseph, and Dwight Powell. Johnson asserts federal law claims against the individual defendants for excessive force and a *Monell* claim against the City and NYPD. Johnson also asserts against the individual defendants claims under state law for assault, battery, and intentional infliction of emotional distress; and he asserts against the City and NYPD a claim under state law for *respondeat superior* liability.

Johnson claims that he suffered severe and permanent injuries, including the re-rupturing of his left Achilles tendon and severe emotional distress, resulting from the acts of Defendants. *See* Third Amended Compl. ¶ 46. Following extensive discovery, Defendants moved for partial summary judgment on March 26, 2018. *See* Doc. 79. Defendants, however, did not move for summary judgment with respect to Johnson's excessive force claims against Officers Powell, Staples, and Joseph.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

Finally, "[w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citation omitted).

## III. DISCUSSION

### 1. Johnson's Claims against the NYPD

Defendants argue that Johnson's claim against the NYPD must be dismissed because the NYPD is a non-suable entity. *See* Defs.' Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Defs.' Mem.") at 8–9, Doc. 82. Johnson does not oppose dismissal of his claims against the NYPD, and, in any event, the Court agrees with Defendants' argument. *See Grant v. Am. Soc'y for the Prevention of Cruelty to Animals*, 16 Civ. 2675 (ER), 2017 WL 1229737, at *9 n.13 (S.D.N.Y. Mar. 31, 2017); N.Y. City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). Accordingly, Johnson's claims against the NYPD are dismissed.

### 2. Johnson's Claims for False Arrest

Defendants argue that Johnson's claims for false arrest should all be dismissed. After careful consideration of the parties' arguments, the Court agrees with Defendants.

**A.** *Legal Standard: False Arrest, Probable Cause, and Qualified Immunity*

"[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). To establish a § 1983 claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."[2] *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Generally, confinement is "privileged" when there is probable cause to make an arrest. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). In other words, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted).

Probable cause to make an arrest "exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

As the Second Circuit has emphasized, "probable cause is a fluid standard that does not demand hard certainties or mechanistic inquiries; nor does it demand that an officer's good-faith

---

[2] "The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." *Hygh v. Jacobs*, 961 F.2d 359, 366 (internal quotations marks omitted).

belief that a suspect has committed or is committing a crime be correct or more likely true than false." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks omitted). "Rather, it requires only facts establishing the kind of fair probability on which a reasonable and prudent person, as opposed to a legal technician, would rely." *Id.* (internal quotation marks and brackets omitted). In determining whether probable cause existed to support an arrest, courts must consider the totality of the circumstances, including the facts available to the arresting officer both immediately before and at the time of arrest. *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015).

Even if a court concludes that an arresting officer lacked probable cause to arrest, the officer is entitled to qualified immunity if the officer establishes that "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Williams v. City of New York*, No. 17 Civ. 4391 (ER), 2018 WL 4189515, at *2 (S.D.N.Y. Aug. 31, 2018) (internal quotation marks omitted). Put differently, an officer is entitled to qualified immunity if there is "arguable probable cause," a concept that turns on whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well[-]established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (citation omitted).

**B.**    *Analysis*

Defendants argue that Johnson's claim for false arrest fails because there was probable cause to arrest him both for obstructing governmental administration ("OGA") under New York Penal Law § 195.05;[3] and for three types of disorderly conduct under New York Penal Law §§ 240.20(1), (3), and (6).[4]  *See* Defs.' Mem. at 9–11.  Moreover, Defendants argue that even if probable cause did not exist, *arguable* probable cause existed and, therefore, qualified immunity shields the officers from liability.  *Id.* at 13–15.

Naturally, Johnson disagrees with Defendants and instead claims that there are triable issues of fact as to whether probable cause existed to arrest him.

Ultimately, the Court need not answer definitively whether there was probable cause to arrest Johnson for OGA and disorderly conduct because, at minimum, there was arguable probable cause to arrest him for both offenses.  Accordingly, the claims against the NYPD officers are barred by the doctrine of qualified immunity, entitling Defendants to summary judgment on these claims as a matter of law.

   i.    Obstructing Governmental Administration ("OGA")

"Under New York law, [OGA] has four elements:  (1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference."  *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (internal

---

[3] § 195.05 provides, in relevant part, the following:  "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."  N.Y. Penal Law § 195.05 (McKinney 1998).

[4] Those provisions in § 240.20 provide, in relevant part, the following:  "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:  (1) [h]e engages in fighting or in violent, tumultuous or threatening behavior; or . . . (3) [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture; or . . . (6) [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  N.Y. Penal Law §§ 240.20(1), (3), and (6).

quotation marks omitted). Relevant here, "[a]n officer has probable cause to arrest for [OGA] where a person refuses to comply with an order from a police officer." *Marcavage v. City of New York*, No. 05 Civ. 4949 (RJS), 2010 WL 3910355, at *10 (S.D.N.Y. Sept. 29, 2010) (quoting *Johnson v. City of New York*, No. 05 Civ. 7519 (PKC), 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008)), *aff'd*, 689 F.3d 98 (2d Cir. 2012).

In this case, Defendants contend that there was, at minimum, arguable probable cause to arrest Johnson for OGA when he failed to comply with numerous police orders to leave the block party. Defs.' Mem. at 11. The Court agrees. It is undisputed that Johnson first observed officers trying to disperse the block party crowd around 9:00 p.m., yet Johnson failed to leave at that time. *See supra* Part I.1. Indeed, Johnson testified that he remained seated at the block party throughout the approximately twenty minutes the police officers initially spent attempting to disperse the crowd. Moreover, Johnson acknowledges that he remained seated after the police officers returned to their vehicles and turned on their sirens—actions Johnson understood as further attempts to disperse the crowd. Johnson also acknowledges that he initially remained seated when the officers returned to the block party and directly asked him to leave. Under these facts, even viewing them in a light most favorable to Johnson, no reasonable factfinder could conclude that he was compliant with the officers' lawful commands at this point in the evening.

Johnson argues, however, that there was not probable cause to arrest him for two reasons: (1) he did not "physically interfere" with the officers' performance of an official function; and (2) viewing the facts in a light most favorable to him, he was in the process of walking up the street when the officers arrested him. Pl.'s Mem. of Law in Opp. ("Pl.'s Mem.") at 11–12, Doc. 84. The Court disagrees with both arguments.

At the outset, the Court notes that Johnson is correct when he argues that an OGA arrest cannot be sustained based on a theory of *verbal* interference alone. *See Uzoukwu v. City of New York*, 805 F.3d 409, 414–15 (2d Cir. 2015). As the Second Circuit has observed, "[i]t is axiomatic that only *physical* interference is encompassed in [that] method of obstruction." *Id.* (emphasis added) (internal quotation marks, citations, and alterations omitted). That said, the physical interference requirement is construed broadly, and it is satisfied "when an individual intrudes himself into, or gets in the way of, an ongoing police activity." *Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017) (brackets omitted), *cert. denied*, 138 S. Ct. 487 (2017). And here, the Court finds the physical interference requirement easily satisfied.

*Marcavage* is instructive. In that case, NYPD officers arrested two anti-abortion protestors and charged them with disorderly conduct after the protestors failed to comply with orders to move from a public sidewalk to a designated demonstration area during the 2004 Republican National Convention in New York City. 2010 WL 3910355 at *1–3. After their charges were dismissed, the protestors sued the City for, among other claims, false arrest. *Id.* The district court granted summary judgment in favor of the City, concluding that "[p]laintiffs' repeated refusal to follow lawful dispersal orders created probable cause to arrest [p]laintiffs for [OGA] pursuant to N.Y. Penal Law § 195.05." *Id.* at *10.

The Second Circuit affirmed. 689 F.3d at 109–10. Importantly, while the Second Circuit noted that the plaintiffs were hostile and noncompliant toward the NYPD officers, *see id.*, its finding of probable cause did not turn on whether plaintiffs physically touched any of the officers; nor did it turn on whether plaintiffs attempted to intimidate the officers in any way. Rather, the Second Circuit found the existence of probable cause based on plaintiffs' repeated failures to comply with lawful orders to disperse. *Id.*; *see also Akinnagbe v. City of New York*,

12

128 F. Supp. 3d 539, 544–55 (E.D.N.Y. 2015) (finding probable cause to arrest plaintiff for OGA where plaintiff refused to comply with officer's lawful order to disperse); *Johnson*, 2008 WL 4450270, at *10 (finding probable cause to prosecute plaintiff for OGA where plaintiff ignored police orders to open the door and show his hands); *Allen v. City of New York*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007) (finding probable cause to arrest for OGA where inmate refused to obey correction officers' orders to move).

The facts in this case mirror those of *Marcavage* and others. On August 30, 2014, Johnson had ample time to leave the block party: He first observed police officers ordering everyone to leave the block party around 9:00 p.m., more than thirty minutes *before* his eventual arrest. And, while Johnson disputes that he cursed at any police officers directly that night, he admits that he stopped walking and remarked aloud that the officers "need[ed] to get a fucking life" *after* an officer had approached him and told him to leave for the second time. Based on these facts and the totality of circumstances—which included Johnson loitering among a crowd of partygoers that were yelling, cursing, and, at least in some instances, throwing glass bottles at officers trying to disperse an unpermitted block party—a police officer could reasonably have concluded that Johnson was refusing to comply with a lawful police order and therefore obstructing governmental administration. *See Kass*, 864 F.3d at 210.

Moreover, while Johnson testifies that he initially started to leave the block, the record is clear that he was not in the process of leaving immediately prior to his arrest. On the contrary, viewing the facts in the light most favorable to Johnson—in fact, relying *solely* on his own deposition testimony—the Court finds the following: After police officers returned to the block party, an officer directly ordered Johnson to leave. Johnson Dep. at 150:5–151:11. Johnson, however, waited roughly thirty seconds before he started to walk. *Id.* He then walked roughly

two buildings away from his original spot, at which point he stopped and loitered among a hostile crowd of partygoers to watch an altercation between police officers and another man. *Id.* at 152:21–153:9. Johnson, at this point, was non-compliant with a lawful order. In addition, while still loitering, Johnson remarked aloud that the officers needed to "get a fucking life." *Id.* at 167:19–168:3. Johnson, at this point too, was non-compliant with a lawful order. Consequently, Johnson's refusal to leave the block party despite the officers' repeated attempts to disperse the crowd comfortably distinguishes this case from those in which courts have found triable issues of fact as to whether a plaintiff was in the process of complying with police orders at the time of arrest. *See, e.g.*, *Bryant v. Serebrenik*, No. 15 Civ. 3762 (ARR) (CLP), 2016 WL 6426372, at *4 (E.D.N.Y. Oct. 28, 2016) (finding summary judgment unwarranted where there was a dispute as to whether plaintiffs' children were attempting to comply with officers' orders immediately prior to arrest); *Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2017 WL 3449352, at *5 (S.D.N.Y. Aug. 10, 2017) (denying summary judgment to defendant-officer where there was a dearth of undisputed evidence demonstrating that the time between the officer's first order to leave and when plaintiff started to leave created an interference with the officer's attempts to clear the area).

On these facts, the Court concludes that, at minimum, arguable probable cause existed to arrest Johnson for OGA, notwithstanding that Johnson started to comply with police orders before deciding to stop.[5] Consequently, Johnson's false arrest claims against Defendants are barred by the doctrine of qualified immunity and must be dismissed.

---

[5] In reaching this conclusion, the Court does *not* hold that an individual's failure to comply *expeditiously* with a police officer's lawful request to disperse from the area always gives rise to arguable probable cause to arrest that individual for OGA pursuant to N.Y. Penal Law § 195.05.

ii.    Disorderly Conduct

Defendants also argue that there was, at minimum, arguable probable cause to arrest Plaintiff for disorderly conduct, pursuant to §§ 240.20(1), (3), and (6) of New York Penal Law. The Court agrees.

The analysis here is straightforward.  To prove the crime of disorderly conduct under § 240.20, the following must be established:  "(i) the defendant's conduct must be 'public' in nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).  The statute sets forth seven separate descriptions of actions that constitute disorderly conduct.  Relevant here, a person is guilty of disorderly conduct under § 240.20(1) when the person "engages in fighting or in violent, tumultuous or threatening behavior."  N.Y. Penal Law § 240.20(1) (McKinney 1965).  A person is guilty under § 240.20(3) when, "[i]n a public place, he uses abusive or obscene language, or makes an obscene gesture."  *Id.* § 240.20(3).  And a person is guilty under § 240.20(6) if the person "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  *Id.* § 240.20(6).  Of course, in each of these scenarios, the person must also have acted with the requisite intent—that is, intent to cause public inconvenience, annoyance, or alarm—or with recklessness as to a risk thereof.

Here, the Court easily concludes that the officers had, at minimum, arguable probable cause to arrest Johnson for disorderly conduct under § 240.20(6).[6]  To violate that provision, Johnson must have (1) congregated with others in (2) a public place and (3) refused to comply

---

[6] Because the Court concludes that there was probable cause to arrest Johnson for disorderly conduct pursuant to N.Y. Penal Law § 240.20(6), it need not consider whether there was probable cause to arrest Johnson under other provisions of the statute.

with (4) a lawful police order to disperse.  *Id.*  Johnson—as an attendee at a block party that drew

hundreds of partygoers—undoubtedly was "congregating with others" at the time of arrest,

satisfying the first prong of § 240.20(6).  *See People v. Carcel*, 144 N.E.2d 81, 85 (N.Y. 1957)

(explaining that the phrase "congregates with others," as used in the statute, "requires at the very

least three persons assembling at a given time and place.").  Johnson also was out in public at the

time of arrest, satisfying the second prong of § 240.20(6).  And Johnson does not dispute the

legality of the police officers' myriad orders to disperse from the block party.  Thus, the fourth

prong of § 240.20(6) is satisfied.

Johnson, however, contends that there is a triable issue of fact as to whether he refused to

comply with the police officers' order to disperse.  The Court disagrees.  As discussed above, the

record shows that whereas Johnson eventually started to walk away from the block party, he

stopped walking soon thereafter and was not in the process of leaving the block party at the time

of his arrest.  And given the size of the crowd, by failing to disperse Johnson recklessly created,

at minimum, the risk of public inconvenience, annoyance, and alarm.  Accordingly, an officer

could reasonably have concluded that Johnson was refusing to comply with a lawful order to

disperse and thus was in violation of § 240.20(6).  *See Caravalho v. City of New York*, No. 13

Civ. 4174 (PKC), 2016 WL 1274575, at *7–8 (Mar. 31, 2016), *aff'd*, 732 F. App'x 18 (2018).

Consequently, arguable probable cause existed to arrest him, entitling the defendant officers in

this case to qualified immunity.[7]

---

[7] Because the Court concludes that there was at least arguable probable cause to arrest Johnson, the Court need not
consider Defendants' alternative contention that certain of the individual defendants were not "personally involved"
in his arrest and thus cannot be held liable for false arrest.  *See* Defs.' Mem. at 16–17.

### 3. Johnson's Claims for Excessive Force

####    A.    *Legal Standard:  Direct Participation and Failure to Intervene*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Cox v. Fischer*, 248 F. Supp. 3d 471, 479 (S.D.N.Y. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Where, as here, the plaintiff's excessive force claims arise from an arrest by police officers, courts should examine the reasonableness of the officers' use of force against the plaintiff's Fourth Amendment right to be free from unreasonable seizures.  *Graham*, 490 U.S. at 394–95.  This inquiry "require[s] a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* at 396.  In undertaking such an inquiry, the Supreme Court has instructed lower courts to give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting or attempting to evade by flight." *Id.* at 396.  The inquiry is objective:  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.  Put differently, "it is not relevant whether the officers thought the amount of force used was really necessary or were provoked to use that amount of force because of the abusive language they contend [the plaintiff] directed at them." *Brown v. City of New York*, 798 F.3d 94, 101 n.10 (2d Cir. 2015).

Moreover, it is well settled that a defendant in a § 1983 action may not be held liable for an award of damages to a plaintiff absent "personal involvement" in the conduct resulting in a constitutional violation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). Personal involvement may be shown by two alternate methods. First, "[p]ersonal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Id.* (quoting *Provost,* 262 F.3d at 155).

Alternatively, personal involvement may be shown under a "failure to intervene" theory. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 559 (S.D.N.Y. 2003). Consequently, liability attaches to any police officer who was (1) present during the plaintiff's assault yet (2) failed to intervene on the plaintiff's behalf notwithstanding (3) a reasonable opportunity to do so. *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). The Second Circuit has identified several illustrative factors to consider when addressing the question whether an officer had a realistic chance to intervene, including: (1) the numbers of police officers present; (2) the officers' relative placement; (3) the environment in which the officers acted; (4) the nature of the assault; and (5) the assault's duration, which the Second Circuit noted "will always be relevant and will frequently assume great importance." *Figueroa*, 825 F.3d at 107–08 (citation omitted).

"The ability to proceed under the alternate theories of direct participation and failure to intervene is especially important 'where the acts complained of by the plaintiff, if true, (e.g., mace to the eyes, standing on back, 'mushing' face into the ground) are likely to have prevented

plaintiff from identifying which of [the] defendant officers specifically engaged in the bad acts.'"

*Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 622 (D. Conn. 2016) (citation

omitted).  At base, "[t]he essential inquiry is whether, under the circumstances actually

presented, an officer's failure to intervene permits a reasonable conclusion that he became a

'tacit collaborator' in the unlawful conduct of another."  *Figueroa*, 825 F.3d at 107–08.  Of

course, much like proceeding under a theory of direct participation, a plaintiff proceeding under

a failure-to-intervene theory must show that the officer, at the time of his or her failure to act,

observed or had reason to know that the plaintiff's constitutional rights were being violated at the

hands of an official.  *Mack*, 253 F. Supp. 2d at 559.

## B.  *Analysis*

### i.  Claims against Sergeant Perez and Officers Burke and Stapleton

Defendants argue that the excessive force claims should be dismissed summarily against

Sergeant Perez and Officers Burke and Stapleton because those individuals never had physical

contact with Johnson and therefore could not have directly participated in any use of force, much

less excessive force, against him.  Defs.' Mem. at 17–18.  Moreover, Defendants contend that

Johnson waived any opportunity to proceed under a failure-to-intervene theory because he failed

to advance such a theory in his Third Amended Complaint.  *Id.*

Johnson's response is twofold.  First, he claims that there are genuine issues of material

fact concerning whether Perez, Burke, and Stapleton had physical contact with him, considering

all three defendants either placed themselves at the scene of his arrest and subsequent removal

from the area or were identified by others as having been at the scene.  Pl.'s Mem. at 16.

Second, and alternatively, Johnson argues that he has properly advanced a failure-to-intervene

theory of liability that survives summary judgment. *Id.* at 16–17. Below, the Court addresses each argument in turn.

To begin, the Court dismisses the notion that there are triable issues of fact as to whether Perez, Burke, or Stapleton interacted physically with Johnson. Johnson has failed to put forth *any* evidence, much less genuinely disputed evidence, tending to show that the aforementioned officers made physical contact with him. What's more, the Court concludes that Johnson has waived any right to challenge Defendants' factual assertions on this point—at least with respect to Sergeant Perez and Officer Stapleton—by failing to controvert the assertions adequately in his Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1. *See* Pl.'s 56.1 Resp. ¶¶ 70 (failing to controvert adequately Defendants' assertion that Officer Stapleton neither arrested Johnson nor assisted in his arrest), 85 (failing to controvert adequately Defendants' assertion that the first time Perez saw Johnson was as he was being carried to the ambulance by others), 88 (failing to controvert adequately Defendants' contention that Perez neither saw nor interacted with Johnson after watching him be carried off to an ambulance).[8]

---

[8] In answering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, litigants in this District are required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support their position by citing to admissible evidence in the record. *See* Local Rule 56.1(b)–(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). This Court's Individual Practices further require the nonmovant to reproduce each entry in the movant's Rule 56.1 Statement and to set forth a response directly beneath the entry. *See* Individual Practices R. 2(C)(i).

These rules—simple to understand and to apply—are designed to assist the Court by narrowing the scope of issues to be decided in a motion for summary judgment and by identifying the facts material and admissible to that decision-making process. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). Unfortunately, Johnson's counsel has failed to comply with these straightforward requirements.

Johnson's 56.1 Response is deficient in several significant respects. *First*, his 56.1 Response frivolously purports to deny certain factual assertions that Johnson either has admitted in sworn testimony or has otherwise relied on in his opposition papers. See, for example, paragraph 55 of his Response: In that paragraph, Johnson reproduced a 56.1 entry by Defendants that asserted both that he cursed prior to his interaction with Officer Powell and that he exclaimed that the officers needed to get a life. *See* Pl.'s 56.1 Resp. ¶ 55. Defendants cited Johnson's

deposition transcript at 167:19–168:1, which plainly states as much. *Id.* Yet, remarkably, in his 56.1 Response Johnson denies that he was cursing and denies that he exclaimed that the officers needed to get a life—a denial that that contradicts his deposition transcript. Even more remarkable is the fact that Johnson, in support of his denials, cited the *same exact transcript pages* as Defendants. See also, as another example, paragraphs 100 through 102 of Johnson's 56.1 Response: In those paragraphs, Johnson reproduced 56.1 entries by Defendants that asserted both that Officer Tirado was the person who escorted Johnson to the hospital in an ambulance, and that Johnson "has no complaints against the officer that escorted him to the hospital." *See id.* ¶¶ 101–02. In response to these entries, Johnson "admits that the above testimony was given but does not concede the truth of the testimony." Importantly, however, Johnson does not point to *any* competent evidence suggesting Officer Tirado was not the officer who accompanied him to the hospital, and *Johnson's own deposition transcript*—cited by Defendants—plainly states that Johnson has no issues with the officer who accompanied him to the hospital. *See* Johnson Dep. at 212:21–214:25. Consequently, Johnson's hesitance to admit to these assertions are as perplexing to the Court as they are troubling.

*Second*, Johnson's 56.1 Response fails to comply with Fed. R. Civ. P. 56(c) and Local Rule 56.1 in that it fails to support many of Johnson's purported denials with citations to admissible evidence. On the contrary, in response to several of Defendants' factual assertions supported by record citations, Johnson states that he "admits that the above testimony was given but does not concede the truth of the testimony," notwithstanding that (1) he provides no record citations supporting a contrary conclusion, and (2) many of Defendants' assertions are drawn from or consistent with his deposition testimony and moving papers. *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 8 (refusing to concede that "[o]n August 30, 2014, there was a block party on West 164th Street between Amsterdam Avenue and Edgecombe Avenue, in Manhattan," while stating the same exact thing in his moving papers), 27 (refusing to concede that the crowd at the block party was hostile, cursing, and failed to disperse, notwithstanding his deposition testimony describing the crowd exactly as such), 39 (refusing to concede that bottles were being thrown at officers, notwithstanding his own deposition testimony describing the scene exactly as such), 51 (refusing to concede that the block party crowd was hostile and telling officers, "Fuck out of here, go parole [sic] some real crime," notwithstanding his own deposition testimony stating as much).

*Third*, and finally, Johnson's 56.1 Response improperly interjects arguments and/or immaterial facts in response to factual assertions made by Defendants and supported by the record, without specifically controverting those assertions. *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 22, 104–05, 107, 121–22; *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendants' Rule 56.1 Statement where plaintiff responded with conclusory assertions and legal arguments).

Such flagrant disregard of the Court's Rules cannot stand. *See Holtz*, 258 F.3d at 74 (explaining that where a 56.1 Statement includes factual citations unsupported by the record, those factual assertions should be disregarded); *Costello*, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses to defendants' Rule 56.1 statement where plaintiff failed to refer to evidence in the record). "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011); *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Geoghan v. Long Island R.R.*, No. 06 Civ. 1435 (CLP), 2009 WL 982451, at *5–6 (E.D.N.Y. Apr. 9, 2009) ("Since plaintiff's response does not dispute the accuracy of the assertion, the assertion is deemed to be admitted by plaintiff for purposes of this motion.").

Although the Court is not required to search the record for genuine issues of material fact that Johnson's counsel failed to bring to the Court's attention, *Holtz*, 258 F.3d at 73, the net result of counsel's deficiencies has been to impose on the Court and its limited resources the burden of parsing the entirety of the voluminous record in the case to ensure that his client's claims receive thorough and just consideration. Accordingly, when analyzing the instant motion, the Court has, at times, disregarded averments in Johnson's 56.1 Response that are not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record, or that are improper legal arguments. To the extent that any assertions in Johnson's Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1 are supported by admissible evidence in the record sufficient to create a triable issue of fact as to one of Defendants' factual assertions, the Court will, of course, consider such assertions.

Next, the Court turns to whether excessive force claims can be sustained against Perez, Burke, and Stapleton based on a failure-to-intervene theory. At the outset, the Court dismisses Defendants' argument that Johnson has failed to advance such a theory in his complaint. Instead, the Court concludes that Johnson included in his complaint enough details of the contours of his excessive force claim to provide fair and adequate notice to Defendants. *See* Third Amended Compl. ¶¶ 22 ("At all times relevant to this Complaint, all defendants acted in concert and conspired together through both their acts and *omissions* and are jointly and severally liable for the harms caused to plaintiff." (emphasis added)), 46 ("As a direct and proximate result of the acts and *omissions* of defendants, plaintiff sustained severe and permanent injuries" (emphasis added)). Pleading an excessive force claim is enough; Johnson need not define with particularity at the pleading stage the exact theories of liability he will employ at trial.

Notwithstanding the propriety of advancing a failure-to-intervene theory, the Court concludes that Johnson cannot sustain his claim against Sergeant Perez on this theory because it is undisputed that Perez witnessed neither the alleged force used during Johnson's initial takedown and arrest nor the alleged punch suffered by Johnson next to the ambulance. *See* Pl.'s 56.1 Resp. ¶¶ 70, 88. Rather, the uncontroverted evidence in this case reveals that immediately prior to Johnson's confrontation with Defendant Powell, Perez was "struck in the face with a

---

Moreover, where possible, and in the interests of justice, the Court has relied on uncited record evidence creating genuine disputes of material fact—such as uncited testimony from Johnson's deposition transcript—where relevant facts were not included in either of the parties' Rule 56.1 submissions.

In the future, it simply will not do for counsel to say that genuine issues of material fact exist and then rely on the Court to go find them. Much more is expected from an experienced member of the bar of this Court and will henceforth be *strictly* required.

bottle, fracturing two teeth;" and while Johnson was being carried away by other officers, Perez was tending to Powell, who had also been hit with a bottle. *See Id.* ¶¶ 41, 85–88.

The Court concludes, however, that summary judgment in favor of Officers Burke and Stapleton is unwarranted. Defendants have not moved for summary judgment against Officers Powell, Staples, and Joseph, appropriately conceding that there are triable issues of fact with respect to whether those officers used excessive force in effectuating Johnson's arrest. Given that the deposition testimony and video evidence proffered tend to place Burke and Stapleton within proximity of Powell, Staples, Joseph, viewing the facts in the light most favorable to Johnson, a reasonable factfinder could very well conclude that the former group of officers observed a constitutional violation initiated by the latter group; that they had time to intervene; and that they failed to do so nonetheless. *See Id.* ¶¶ 69, 72–73; Defs.' 56.1 Counterstatement ¶ 29. The cases in this district denying summary judgment on similar facts are legion. *See, e.g.*, *Fischl v. Armitage*, 128 F.3d 50, 56–57 (2d Cir. 1997) (holding that plaintiff-inmate had produced a triable issue of material fact as to the personal involvement of defendant-officer in an unconstitutional assault by other inmates where the admissible record would permit a reasonable juror to conclude that defendant-officer had been in the vicinity of the attack, heard plaintiff's screams, yet did nothing to stop the attack); *Rivera v. Madan,* No. 10 Civ. 4136 (PGG)*, 2013 WL 4860116, at *10 (S.D.N.Y. Sept. 12, 2013) ("Here, it is undisputed that Officer Roberson did not use force against Plaintiff . . . , but there is evidence that she was present when Officer Madan allegedly slammed Plaintiff's head into the floor, and did not intervene. . . . Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Officer Roberson violated her duty to intervene to prevent other officers from violating Rivera's constitutional rights."); *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297–98 (S.D.N.Y.

2009) (denying summary judgment to defendant-officers where plaintiff testified that she could not identify which officer assaulted her but defendant-officers' testimonies revealed that they were all present during the assault, and "it is possible that all of the officers saw what happened" to her, yet failed to intervene"); *Younger v. City of New York*, 480 F. Supp. 2d 723, 731–33 (S.D.N.Y. 2007) (denying summary judgment to certain officers where record evidence tended to place the officers at the scene of plaintiff's alleged beating and the officers conceded that there were triable disputes of fact surrounding the force used in effectuating plaintiff's arrest by others at the scene); *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 599–600 (S.D.N.Y. 2013) ("[S]ummary judgment is inappropriate when there are genuine disputes of material fact concerning what the officers who failed to intervene observed regarding the other officers' alleged violations of plaintiffs' constitutional rights." (internal quotation marks omitted)); *Skorupski v. Cty. of Suffolk*, 652 F. Supp. 690, 694 (E.D.N.Y. 1987) (denying summary judgment on excessive force claims to almost named defendants where "[a]ll the named defendants, with the exception of [one], ha[d] admitted being present during the arrest, and two . . . admit[ted] physical contact with plaintiff").  Consequently, the excessive force claims against Officers Burke and Stapleton may proceed to trial on a failure-to-intervene theory of excessive force.

ii.    Claims against Officers Tirado and Valerio

The Court now turns to the excessive force claims against Officers Tirado and Valerio. At the outset, the Court dismisses the excessive force claim against Officer Tirado, given that Johnson has expressly disavowed all claims against the officer who accompanied him to the hospital, and he has not produced any evidence to controvert Tirado's statements that *he* was the

officer who accompanied Johnson to the hospital.  *See supra* note 8.  The claim against Valerio, however, requires further analysis.

With respect to Valerio, Defendants seek summary judgment on the ground that there exists a dearth of record evidence suggesting Valerio had personal involvement of any kind with the alleged acts of excessive force exacted upon Johnson.  The Court disagrees.  For one thing, Defendants concede that Valerio had his baton drawn while in some (albeit disputed) proximity to Johnson during Johnson's struggle and eventual arrest.  Defs.' 56.1 Counterstatement ¶ 30.  Defendants also concede—as they must—that Valerio, along with others, helped carry Johnson to an ambulance soon after he was handcuffed.  *See id.* ¶ 28.  And Johnson contends that he was punched by an unidentified officer soon after being dragged and seated on the ground next to the ambulance.  Given Valerio's physical involvement with Johnson during this time and viewing the facts in a light most favorable to Johnson, a rational factfinder could conclude that Valerio helped exact excessive force upon him.  Moreover, even assuming arguendo that Valerio lacked physical contact with Johnson, Valerio's proximity to Johnson both at the time of his arrest and at the time he was seated by the ambulance creates an issue of triable fact as to whether Valerio failed to intervene during any of the alleged assaults.[9]  That Johnson cannot identify which officers exacted excessive force against him is, therefore, of no moment.  *See Jeffreys*, 275 F. Supp. 2d at 474 ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene."); *Vesterhalt*, 667 F. Supp. 2d at 297–98; *Gonzalez*, 199 F. Supp. 3d at 622 (explaining same).  Rather, it is enough that there exists

---

[9] The Court notes that while Defendants assert—and Johnson does not adequately dispute—that (1) Valerio first observed Johnson while he was already on the ground and in the process of being arrested, *see* Pl.'s 56.1 Resp. ¶ 74, and that (2) Valerio was performing crowd control while other officers arrested Johnson, *see* Pl.'s Resp. ¶ 75, neither assertion negates the genuine disputes as to (1) whether Valerio imposed excessive force upon Johnson while he was being arrested (or thereafter), and (2) whether Valerio failed to intervene after observing officers use excessive force upon Johnson.  Defs.' 56.1 Counterstatement ¶¶ 28–30.

admissible evidence tending to place Valerio—in addition to Officers Burke and Stapleton—near the scene of Johnson's alleged assaults.

* * * * *

In sum, the Court will grant summary judgment to Defendants as to Johnson's claims excessive force claims against Perez and Tirado, and the Court will deny summary judgment to Defendants as to Johnson's excessive force claims against Burke, Stapleton, and Valerio.

### 4. <u>Johnson's State Law Claims</u>

Defendants contend that Johnson's state law claims are all barred because he failed to comply with the mandatory conditions precedent to suit contained in Sections 50-e and 50-h of the New York Consolidated Laws, General Municipal Law. Below, the Court addresses each argument in turn.

#### A. *Compliance with N.Y. Gen. Municipal Law § 50-e(6)*

Defendants contend that Johnson failed to comply with the conditions precedent set forth in § 50-e of the New York's General Municipal Law because he filed a defective notice of claim against the City. Specifically, Defendants contend that Johnson filed a notice of claim that contained: (1) the wrong address—stating that his alleged beating by police officers occurred on August 31, 2014, instead of August 30, 2014; and (2) the wrong location—stating that the alleged beating occurred in Washington Heights, New York, at or near the intersection of Edge*wood* Avenue and West 164th Street, as opposed to Edge*combe* Avenue and West 164th Street. Johnson's failure to provide the correct date and location of the alleged beating allegedly prejudiced Defendants because the defects did not enable the City to investigate Johnson's claims. Defs.' Mem. at 22–23. The Court disagrees.

It is well settled that federal courts entertaining state law claims against municipalities are obligated to apply any applicable state law notice-of-claim provisions. *See Perez v. City of New York*, 07 Civ. 10319 (RJS) (KNF), 2009 WL 1616374, at *12 (S.D.N.Y. June 8, 2009). "Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226–27 (2d Cir. 2016). The notice must be served within 90 days after the claim arises. N.Y. Gen. Municipal Law § 50-e(1)(a) (McKinney 2013). Among other things, the notice must set forth the following: "(1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) *the time when, the place where and the manner in which the claim arose*; and (4) the items of damage or injuries claimed to have been sustained." *Id.* § 50-e(2) (emphasis added). "Notice of claim requirements are construed strictly by New York state courts," and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1998) (citations omitted). That being said, "[a]t any time after the service of a notice of claim . . . , a mistake, omission, irregularity or defect made in good faith . . . may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby." N.Y. Gen. Municipal Law § 50-e(6).

Here, Johnson failed to adhere to the clear and unambiguous requirements of 50-e, in that he failed to provide the City with the exact date and location of his alleged beating. However, Defendants hardly lacked information sufficient to embark on an investigation of Johnson's claims. A cursory glance of a New York City map would quickly apprise a reasonable investigator that Johnson's notice of claim likely referred to the intersection between West 164th Street and Edge*combe* Avenue, not Edge*wood* Avenue—especially considering that Johnson

identified Washington Heights, New York, as the location of the incident. Johnson's notice also states that officers with the NYPD's 33rd Precinct attacked him, further narrowing the universe of potential incidents. The scope of any such investigation would also be limited in nature, given that Johnson provided a date close in time to the actual date of his arrest and alleged beating. Moreover, the record is devoid of evidence suggesting that Johnson's defective notice was the product of bad faith. Nor does the record evidence suggest that the City was prejudiced by Johnson's errors. Accordingly, the Court will exercise its discretion under § 50-e(6) and disregard the defects in Johnson's notice of claim.

### B. *Compliance with N.Y. Gen. Municipal Law § 50-h*

Defendants contend that Johnson failed to comply with § 50-h and, therefore, Johnson's claims under state law should be dismissed. The Court agrees.

In relevant part, § 50-h(1) provides that "[w]herever a notice of claim is filed against a city, . . . the city . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. Gen. Municipal Law § 50-h(1) (McKinney 2013). Going further, § 50-h(5) provides that "[w]here a demand for examination has been served[,] . . . no action shall be commenced against the city . . . against which the claim is made unless the claimant has duly complied with such demand for examination." The City is required to reschedule a 50-h hearing if the claimant requests an adjournment or postponement of the hearing. *Id.* However, "[s]everal courts have held . . . that a plaintiff's failure to attend a [§] 50-h [h]earing—*no matter the reason*—is a complete bar to his state law claims against the City." *Duncan v. City of New York*, 11 Civ. 3901 (ENV), 2018 WL 3421312, at *3 (E.D.N.Y. July 13, 2018) (quoting *Kennedy v. Arias*, No. 12 Civ. 4166 (KPF), 2017 WL 2895991, at 13 (S.D.N.Y. July 5, 2017)).

In this case, the City demanded a § 50-h hearing, which was originally scheduled for November 14, 2014.  Pl.'s 56.1 Resp. ¶ 109.  Johnson's representative requested, and the City granted, adjournments on at least two separate occasions after the original hearing date.  *Id.* ¶¶ 112, 117.

Johnson's last scheduled hearing was for July 28, 2015.  *Id.* ¶ 119.  However, Johnson's representative called the City on July 27, 2015, and informed them that Johnson would not be appearing for the July 28 hearing.  *Id.* ¶ 121.  Defendants claim that Johnson's representative did not request another adjournment.  Consequently, as Defendants see it, because Johnson neither appeared for his § 50-h hearing nor requested an adjournment prior to filing the instant action, Johnson failed to comply with the condition precedent to suit set forth in § 50-h(5).

Johnson, on the other hand, argues that his representative did, in fact, request an adjournment of the § 50-h hearing, and he blames the City for failing to reschedule it.  Pl.'s Mem. at 20–22.  In support of his position, Johnson attached to his moving papers an affidavit of Ms. Maria Ortega, a former paralegal for Johnson's counsel, who was at one time assigned to Johnson's case.  *See* Doc 83-22.  In her affidavit, Ms. Ortega acknowledges that she has "no independent recollection" of requesting an adjournment of the July 28 hearing.  Nevertheless, she avers that, pursuant to the law firm's "set procedure," if a client, like Johnson, had a pending criminal matter, she would have requested an adjournment of the § 50-h hearing until the criminal matter concluded.  She further averred that, following the criminal matter's conclusion, she would have requested that the City schedule a § 50-h hearing.  She claims to have never waived a client's § 50-h hearing.

After careful consideration, the Court finds that there are quintessential factual disputes concerning whether Johnson's representative did, in fact, request an adjournment.[10]  However, the Court does not find these factual disputes material.  In particular, the Court finds the reasoning in *Gilliard v. City of New York* persuasive:

> Although the Second Circuit has not definitively decided the issue, courts have placed the burden on the plaintiff to resolve any discrepancies regarding the rescheduling of a 50–h Hearing in accordance with the Second Circuit's directive to construe Notice of Claim requirements "strictly."  Disregarding any proffered reason is also good policy:  while the City must handle the rescheduling of thousands of 50–h Hearings, a plaintiff is only concerned with her own and is in a better position to ensure that the parties are on the same page.  For these reasons, Plaintiff's failure to attend the 50–h Hearing—no matter the reason—is a complete bar to his state law claims against the City.

No. 10 Civ. 5187 (NGG), 2013 WL 521529, at *16 (E.D.N.Y. Feb. 11, 2013) (internal citations omitted); *see also Duncan*, 2018 WL 3421312, at *3; *Kennedy*, 2017 WL 2895901, at *13.  The logic of this approach is sound.[11]  Johnson is suing the City, and Johnson is the one responsible for prosecution of this action.  Accordingly, Johnson is in a better position to ensure that all conditions precedent have been met prior to filing suit.  Because he has failed to adhere to this condition precedent prior to filing suit, his state law claims are dismissed.

---

[10] For example, while Defendants contend that the Office of the Comptroller of the City of New York does not accept verbal requests for adjournments, *see* Defs.' Mem. at 10 n.6, it is undisputed that the City granted Johnson adjournments on two separate occasions, and there is no record evidence suggesting that the adjournments resulted from formal written requests.

[11] The Court notes that neither federal nor New York state courts within this Circuit are consistent on this point. *Compare, e.g.*, *Kennedy v. Arias*, No. 12 Civ. 4166 (KPF), 2017 WL 2895901, at *13 (S.D.N.Y. July 5, 2017); *Bernoudy v. Cty. of Westchester*, 837 N.Y.S.2d 187 (App. Div. 2007) (2d Dep't) ("The Supreme Court properly granted the defendants' motion to dismiss the complaint, since the hearing pursuant to General Municipal Law § 50-h was adjourned at the plaintiff's request, and he commenced this action without rescheduling a new hearing date after the last adjournment."); *Best v. City of New York*, 468 N.Y.S.2d 7, 8 (App. Div. 1983) (1st Dep't) *with, e.g.*, *Anderson v. Liberty Lines Transit, Inc.*, 31 N.Y.S.3d 882 (App. Div. 2016) (1st Dep't) (Liberty's motion to dismiss the complaint on the ground that plaintiff failed to attend a [§ 50-h] hearing was properly denied. The record established that Liberty granted plaintiff an adjournment of the hearing, did not set a subsequent date, and never sought to reschedule the hearing.").

**5. Johnson's Claim for Municipal Liability**

In his Third Amended Complaint, Johnson alleges that the City is liable for his § 1983 claims for false arrest and excessive force because the City "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons incarcerated in the custody of the [NYPD], which policies and/or customs caused the violation of [his] rights." Third Amended Compl. ¶ 54, Doc. 36. Johnson claims that "it was the policy and/or custom" of the City "to improperly or inadequately investigate complaints of people in the custody of the [NYPD], and acts of abuse, excessive force, and misconduct were instead tolerated, encouraged, and ratified by" the City. *Id.* ¶ 55.

In their motion for summary judgment, Defendants argue that Johnson's municipal liability claim is "entirely conclusory and unsupported by anything in the record." Defs.' Mem. at 20. Johnson, in response, maintains that the "[t]he record supports this claim based on the pervasive use of excessive force against the plaintiff and others on the night of August 30, 2014." Pl.'s Mem. at 19. Defendants' motion for summary judgment on this claim is granted.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). In other words, a municipality cannot be held liable for the tort of its employees based on the doctrine of *respondeat superior. Coon v. Town of Springfield,* 404 F.3d 683, 686–87 (2d Cir. 2005) (citing *Monell,* 436 U.S. at 694); *see also Hunter v. Town of Mocksville*, 897 F.3d 538, 553–54 (4th Cir. 2018) (explaining that "a municipality cannot be held liable *solely* because it employs a tortfeasor" (internal quotation

marks and citation omitted)).  Consequently, isolated acts of excessive force by non-policymaking municipal employees are insufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.  *Villante v. Dep't of Corr.,* 786 F.2d 516, 519 (2d Cir. 1986).  "On the other hand, such acts would justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven,* 691 F.3d 72, 81 (2d Cir. 2012).

Here, while Johnson contends that his municipal liability claim is "based on a policy implemented by the City," pursuant to which the City failed to investigate claims of excessive force, resulting in officers customarily using excessive force without fear of reprisal, *see* Pl.'s Mem. at 18–19, he has produced no evidence to support this assertion.  Defendants' motion for summary judgment is therefore granted on this claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.  Specifically:

(1) The Court GRANTS summary judgment to Defendants on Johnson's claims against the NYPD;

(2) The Court GRANTS summary judgment to Defendants on Johnson's claims for false arrest under state and federal law;

(3) The Court GRANTS summary judgment to Defendants on Johnson's claims against Sergeant Perez and Officer Tirado for excessive force;

(4) The Court DENIES summary judgment to Defendants on Johnson's claims of excessive force against Officer Burke, Officer Stapleton, and Officer Valerio;[12]

(5) The Court GRANTS summary judgment to Defendants on Johnson's claim for municipal liability under 42 U.S.C. § 1983; and

(6) The Court GRANTS summary judgment to Defendants on Johnson's remaining claims under state law for failure to comply with conditions precedent to suit.

Defendants did not move for summary judgment with respect to Johnson's excessive force claims against Officers Powell, Staples, and Joseph. Thus, those claims will also proceed to trial.

The parties are directed to appear for a status conference on Tuesday, February 26, 2019, at 10:00 A.M. The Clerk of Court is respectfully directed to terminate the motion, Doc. 79.

It is SO ORDERED.

Dated:    January 23, 2019
          New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.

---

[12] The Court reiterates that Johnson may prove his claims against Burke and Stapleton at trial on a failure-to-intervene theory of liability only, as there is no genuine issue of fact with respect to whether those defendants exacted any force *physically* upon Johnson. *See supra* Part III.3.B.i.